UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

JOHN HUDSON,

    Plaintiff,

v.                                                                          2:04-CV-01518-PMP-RJJ

CITY OF NORTH LAS VEGAS, ET AL.,                      O R D E R

    Defendants.

       Presently before the Court is Plaintiff's Motion for Summary Judgment Regarding Liability of Defendant City of North Las Vegas (Doc. #28), filed on August 25, 2006 and Defendants' Motion for Summary Judgment (Doc. #46), filed on September 1, 2006. On September 11, 2006, Defendants filed an Opposition to Plaintiff's Motion for Summary Judgment (Doc. #59). Plaintiff did not file a Reply to Defendants' Opposition and did not file an Opposition to Defendants' Motion for Summary Judgment.[1]

**I.     BACKGROUND**

       On October 11, 2002, at approximately 4:50 a.m., Defendant police officer James Miranda ("Miranda") was patrolling Las Vegas Boulevard when he observed two people standing by a vehicle in the Poker Palace's parking lot. (Defs.' Mot. for Summ. J., Ex. A, Dep. of James Miranda ["Miranda Dep."] at 12-13.) Officer Miranda made a u-turn and

---

[1] Under the District of Nevada's Local Rules of Practice, failure to respond to any motion constitutes a consent to the granting of the motion. See LR 7-2(d) (2006). However, to the extent that Hudson's motion for summary judgment addresses issues argued in Defendants' motion for summary judgment, the Court will treat Hudson's motion for summary judgment as a response.

1  watched the two subjects through his binoculars.  (Id. at 13.)  One individual was standing
2  by the vehicle's driver's side and the second individual was sitting in the driver's seat.  (Id.
3  at 13.)  Once Officer Miranda pulled his patrol car into the parking lot, the individual
4  standing next to the vehicle began to walk away quickly.  (Id. at 14, 16.)  Concerned that the
5  subjects were tampering with or breaking into the vehicle, Officer Miranda approached the
6  vehicle to investigate and noticed Plaintiff John Hudson ("Hudson") laying down in the
7  driver's side seat.  (Id. at 16.)  According to Officer Miranda's undisputed testimony,
8  Hudson looked up, out the passenger rear window in the direction of the patrol car and got a
9  square baggie out of his pocket, put it into his mouth, and then laid back down and closed
10 his eyes.  (Id. at 17.)

11      After observing Hudson from outside of the vehicle, Officer Miranda knocked on
12 the window several times and told Hudson to open the door and step out of the vehicle.  (Id.
13 at 18.)  Hudson did not comply with Officer Miranda's instructions and remained in the car.
14 (Id.)  After multiple attempts to get Hudson to open the door, Hudson opened his eyes,
15 unlocked the door, rolled down the window a little, and then laid back down closing his
16 eyes.  (Id. at 19.)  Officer Miranda proceeded to open the vehicle's door and instructed
17 Hudson to step outside of the vehicle but Hudson did not respond.  (Id.)  Consequently,
18 Officer Miranda took hold of Hudson's left wrist to escort him from the vehicle but Hudson
19 pulled away and turned his body from Officer Miranda reaching down into the area between
20 the driver's seat and passenger's seat.  (Id. at 19.)  Officer Miranda then grabbed Hudson's
21 arm to keep him from reaching down and climbed into the vehicle on top of Hudson to
22 control Hudson's body instructing him to spit out the baggie.  (Id. at 20-21.)  Officer
23 Miranda placed his hand along Hudson's jaw and pushed back to prevent Hudson from
24 swallowing the baggie.  (Id. at 20.)

25      While the struggle inside the vehicle continued, police officer Antonio Gomez
26 ("Gomez") opened the back passenger side door to control Hudson's right arm.  (Id. at 23.)

1  Ultimately, Hudson swallowed the baggie and then spoke for the first time saying "I ain't
2  got shit; I ain't got shit, I give up." (Id.) Still holding onto to Hudson's left arm, Officer
3  Miranda got off of Hudson and Hudson stepped out of the vehicle at which point officers
4  Miranda and Gomez placed him into handcuffs and escorted him back to their patrol car for
5  identification. (Id.) After further investigation, the officers determined Hudson was not
6  tampering with or burglarizing the vehicle, but a records check revealed Hudson had a prior
7  felony conviction and had not reported his new address. (Id. at 24, 46.)

8  Officer Miranda issued Hudson citations for failure to register as a felon and for
9  obstructing a police officer. (Id. at 45-46; Pl.'s Mot. for Summ. J. Regarding Liability of
10 Def. City of N. Las Vegas, Ex. 1, 2.) The City of North Las Vegas prosecuted Hudson for
11 these citations. (Pl.'s Mot. for Summ J. Regarding Liability of Def. City of N. Las Vegas,
12 Ex. 2.) During the prosecution, the North Las Vegas Municipal Court granted Hudson's
13 motion to suppress evidence and subsequently dismissed the case against Hudson on
14 August 19, 2003. (Id.)

15 In the present case, Hudson alleges three causes of action against Defendants
16 relating to the October 11 incident. Hudson's first cause of action is a 42 U.S.C. § 1983
17 claim wherein Hudson alleges the Defendant police officers falsely arrested him in violation
18 of his Fourth Amendment rights. (Compl. at 3-4.) Hudson's second cause of action alleges
19 the City of North Las Vegas maintained "a policy, practice, custom or procedure . . . that
20 sanctioned the conduct of defendant officers and caused the injury plaintiff suffered" in
21 violation of Monell v. Dep't of Social Servs. of N.Y., 426 U.S. 658 (1978). (Id. at 4.)
22 Hudson's final cause of action alleges the City of North Las Vegas was negligent in hiring,
23 training, and/or supervising defendant police officers. (Id. at 4-5.)

24 Both Hudson and Defendants have moved for summary judgment. Hudson has
25 moved for summary judgment regarding the City of North Las Vegas' liability under 42
26 U.S.C. § 1983 while Defendants have moved for summary judgment on all counts.

## II.	LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" demonstrate "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The substantive law defines which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All justifiable inferences must be viewed in the light most favorable to the non-moving party. County of Tuolumne v. Sonora Cmty. Hosp., 236 F.3d 1148, 1154 (9th Cir. 2001).

The party moving for summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. Fairbank v. Wunderman Cato Johnson, 212 F.3d 528, 531 (9th Cir. 2000). The burden then shifts to the non-moving party to go beyond the pleadings and set forth specific facts demonstrating there is a genuine issue for trial. Id.; Far Out Prods., Inc. v. Oskar, 247 F.3d 986, 997 (9th Cir. 2001).

## III.	DISCUSSION

### A. Defendant Police Officers' Liability Under 42 U.S.C. § 1983

Defendants move for summary judgment regarding the individual police officers' liability arguing the officers did not deprive Hudson of his constitutional rights because they had reasonable suspicion to perform an investigatory stop. Defendants also argue Plaintiff's false arrest claim must fail because Defendants never arrested Plaintiff. Finally, Defendants argue that even if they violated Hudson's Fourth Amendment rights, they are entitled to qualified immunity. While Hudson did not file an opposition to Defendants' Motion for Summary Judgment, Hudson's own motion for summary judgment contends that the North Las Vegas Municipal Court's granting of Hudson's motion to suppress evidence in the underlying criminal case establishes the officers engaged in unconstitutional misconduct and also bars relitigation of the issue before this Court under the doctrine of collateral estoppel.

**1.  Collateral Estoppel**

Under the doctrine of collateral estoppel, also known as issue preclusion, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." Allen v. McCurry, 449 U.S. 90, 94 (1980).  Under 28 U.S.C. § 1738[2] federal courts are required "to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." Id. at 96.  Accordingly, state law governs federal courts' application of the collateral estoppel effect of a state court judgment.  Heath v. Cast, 813 F.2d 254, 258 (9th Cir. 1987).

In Nevada, a party seeking to preclude relitigation of issues previously decided must meet three elements: "(1) the issue decided in the prior litigation must be identical to the issue presented in the current action; (2) the initial ruling must have been on the merits and have become final; and (3) the party against whom the judgment is asserted must have been a party in privity with a party to the prior litigation." Kahn v. Morse & Mowbray, 117 P.3d 227, 235 (Nev. 2005).  Collateral estoppel may be proper, even where the causes of action asserted in the subsequent proceeding are significantly different from those decided in the prior proceeding, if the court in the prior proceeding actually addressed and decided the same factual issues.  Id. (citing LaForge v. State Univ. Sys., 997 P.2d 130, 133 (Nev. 2000)).  However, when determining whether collateral estoppel applies, "courts must scrupulously review the record to determine if it actually stands as a bar to relitigation." Id.

///

---

[2] 28 U.S.C. § 1738 provides in pertinent part:

[J]udicial proceedings [of any court of any State] shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State . . . .

1    Hudson has not provided the Court with sufficient evidence to apply collateral
2 estoppel in this case.  Although Hudson submitted a certified copy of the North Las Vegas
3 Municipal Court's docket sheet showing that the Court granted a motion to suppress and
4 subsequently dismissed the underlying criminal prosecution, Hudson has failed to
5 demonstrate that the issues the Municipal Court decided are identical to the issues in this
6 case, that the Municipal Court decided the motion on the merits, and that Nevada treats
7 decisions on motions to suppress as final rulings.  In short, Hudson has not provided the
8 Court with enough information to "scrupulously review" the Municipal Court's judgment to
9 determine if application of collateral estoppel is appropriate in this case.  Therefore, the
10 Court will consider the merits of Defendants' Motion for Summary Judgment with respect
11 to the individual officers' liability.

## 2. Investigatory Stop & Qualified Immunity

Defendants argue they did not deprive Hudson of his constitutional rights because they had reasonable suspicion to perform an investigatory stop and probable cause to support the citations.  Defendants also contend Hudson's Fourth Amendment false arrest claim must fail because Defendants issued Hudson two citations in lieu of arresting him. Hudson did not address these arguments in his motion for summary judgment.

"Section 1983 provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights."  Conn v. Gilbert, 526 U.S. 286, 290 (1999).  Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, or other persons within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  Section 1983 is not a source of substantive rights itself, rather it "merely provides a mechanism for enforcing individual rights 'secured' elsewhere, i.e., rights

6

independently 'secured by the Constitution and laws' of the United States." <u>Gonzaga v. Doe</u>, 536 U.S. 273, 285 (2002). To prevail under section 1983, a plaintiff must show the defendant (1) was acting under the color of state law, and (2) deprived the plaintiff of a federal right, secured by either a federal statute or the Constitution. See <u>Karim-Panahi v. Los Angeles Police Dep't</u>, 839 F.2d 621, 624 (9th Cir. 1988).

Neither side disputes Defendants acted under the color of state law on the night in question. Thus, the only issues remaining are whether Defendants deprived Hudson of his Fourth Amendment rights and, if so, whether Defendants are entitled to qualified immunity.

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend. IV. A Fourth Amendment seizure occurs if a reasonable person in the detainee's situation would not have felt free "to disregard the police and go about his business." <u>Cal. v. Hodari</u>, 499 U.S. 621, 628 (1991). Investigatory stops often are seizures subject to the Fourth Amendment restrictions because detainees generally are not free to walk away until the investigation is complete. <u>United States v. Cortez</u>, 449 U.S. 411, 417 (1981).

An investigatory stop is reasonable under the Fourth Amendment if "the officer's action was justified at its inception" and the investigation "was reasonably related in scope to the circumstances which justified the interference in the first place." <u>United States v. Sharpe</u>, 470 U.S. 675, 682 (1985) (quoting <u>Terry v. Ohio</u>, 392 U.S. 1, 20 (1968)). An officer's action is justified at its inception if the officer had "reasonable suspicion" of criminal activity before initiating an investigatory stop. <u>United States v. Sokolow</u>, 490 U.S. 1, 7 (1989). Reasonable suspicion means the officer must be able to identify "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." <u>Terry</u>, 392 U.S. at 21; see also <u>Cortez</u>, 449 U.S. at 417 (stating that "the totality of the circumstances–the whole picture–must be taken into account" when

determining if an officer had reasonable suspicion to perform an investigatory stop).  The reasonable suspicion standard is less demanding than the probable cause standard and only requires "a minimal level of objective justification."  Gallegos v. City of Los Angeles, 308 F.3d 987, 990 (9th Cir. 2002) (quoting Ill. v. Wardlow, 528 U.S. 119, 123 (2000)).  The investigation is reasonably related to the circumstances justifying the initial interference if the officer's actions during the detention were reasonable in terms of scope and duration.  See Hiibel v. Sixth Judicial Dist. Court of Nev., 542 U.S. 177, 185-86 (2004).

An officer attempting to perform an investigatory stop appropriately may use some force if the individual will not comply with his request to stop.  United States v. Patterson, 648 F.2d 625, 633 (9th Cir. 1981).  An officer's use of force momentarily restricting a person's freedom may be necessary to preserve the status quo and to protect the officer's safety while the officer makes an initial inquiry.  Id.; United States v. Hensley, 469 U.S. 221, 235 (1985).  Such a restriction does not transform an investigatory stop into an arrest.  Patterson, 648 F.2d at 633.  Any ruling to the contrary would leave police officers "powerless to perform their investigative functions without the cooperation of suspects."  Id.

No bright line rule exists for determining "when an investigatory stop crosses the line and becomes an arrest."  United States v. Parr, 843 F.2d 1228, 1231 (9th Cir. 1988).  "[A]n investigative detention does not automatically become an arrest when officers draw their guns, use handcuffs, or place a suspect in the back of a patrol car."  Gallegos, 308 F.3d at 991.  Instead, whether a police detention is an investigatory stop or an arrest is a fact-intensive inquiry.  Gallegos, 308 F.3d at 991.  The inquiry requires the Court to consider "all of the surrounding circumstances, including the extent that freedom of movement is curtailed and the degree and type of force or authority used to effectuate the stop."  Patterson, 648 F.2d at 632 (internal quotation omitted).  Other factors include how diligently and expeditiously the police resolved their reasonable suspicion and whether the

officers' conduct was more intrusive than necessary in conducting the investigation. See Sharpe, 470 U.S. at 686; Florida v. Royer, 460 U.S. 491, 504 (1983).

When a government official is sued in his or her individual capacity for allegedly violating section 1983, the official may raise the affirmative defense of qualified immunity. Sonoda v. Cabrera, 255 F.3d 1035, 1042 (9th Cir. 2001). Qualified immunity "insulates government agents against personal liability for money damages for actions taken in good faith pursuant to their discretionary authority." Id. In ruling on a qualified immunity defense, a court first must consider whether the facts, viewed in a light most favorable to the plaintiff, show the defendant's conduct violated a constitutional right. Sorrels v. McKee, 290 F.3d 965, 969 (9th Cir. 2002). If the plaintiff has alleged a deprivation of a constitutional right, the court then must determine whether that right was clearly established. Id. A right is clearly established if "'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Wilkins v. City of Oakland, 350 F.3d 949, 954 (9th Cir. 2003) (quoting Saucier v. Katz, 533 U.S. 194, 202 (2001) (emphasis omitted)). The plaintiff bears the burden of showing that the right at issue was clearly established. Sorrels, 290 F.3d at 969.

Defendants' encounter with Hudson on October 11, 2002, constituted a seizure under the Fourth Amendment because the officers restricted Hudson's liberty so that he was not free to leave. However, taking into account the totality of the circumstances, Defendants' seizure was not unreasonable because Defendants had reasonable suspicion of criminal activity at the time they initiated the investigatory stop and limited the scope of the investigation to those circumstances giving rise to the investigation in the first place.

Officer Miranda testified that he noticed Hudson and another individual standing by the driver's side of a parked car in a casino parking lot at approximately 4:50 a.m. Given the time of night and the high volume of cars stolen from parking lots, Officer Miranda and his partner watched Hudson through binoculars for a period of time and then pulled their

patrol car into the casino parking lot. Upon entering the parking lot, one of the subjects quickly walked away from the vehicle while the other subject remained in the vehicle and reclined the seat. Unable to see what Hudson was doing inside the vehicle, officer Miranda approached the vehicle on foot and observed Hudson pretending to be asleep. Officer Miranda testified that he then saw Hudson look up, out the back window towards the patrol car, retrieve a square baggie out of his pocket, place the baggie in his mouth, and then lay back down closing his eyes.

Based on these specific facts Officer Miranda articulated during his deposition and the rational inferences that could be drawn from these facts, Defendants had reasonable suspicion of criminal activity to initiate an investigatory stop. Moreover, Defendants' actions during their investigation were reasonably related to the circumstances giving rise to their suspicion. Officer Miranda testified that after they handcuffed Hudson they were able to check the vehicle, the vehicle's registration, and Hudson's identification to determine whether Hudson was attempting to steal the vehicle. Further, Hudson has neither alleged, nor is there any evidence to suggest that Defendants were not diligent in performing their investigation or that the scope of their investigation ventured into areas unrelated to their suspicion of a car theft. Although Defendants ultimately determined Hudson was not stealing the vehicle, that does not mean Defendants did not have reasonable suspicion to perform the stop. The Fourth Amendment accepts the risk that officers may stop innocent people. Gallegos, 308 F.3d at 992.

Defendants' use of force in response to Hudson's failure to cooperate during the investigation was also reasonable and did not transform the investigatory stop into an arrest. Hudson refused to comply with Officer Miranda's repeated requests to open the vehicle door, refused to exit the vehicle when instructed to do so, pulled away from Officer Miranda when Officer Miranda took hold of his wrist to escort him out of the vehicle, refused to spit out the baggie he put in his mouth, and struggled with Officer Miranda in the

driver's seat while attempting to reach down into the center console area.  Officer Miranda testified at his deposition that the situation "was volatile" and "needed to be taken care of and calmed down before an investigation could be completed." (Miranda Dep. at 33.)  The officers did not know what was in the vehicle, who Hudson was, what Hudson may have swallowed, what Hudson was reaching for, or why Hudson was resisting.  Consequently, Defendants' use of force, including handcuffing Hudson, was both reasonable and necessary to maintain the status quo and to protect the officers' safety during the investigation and did not transform the investigatory stop into an arrest.  However, even if the Court were to conclude Defendants violated Hudson's Fourth Amendment rights, Defendants still would be entitled to qualified immunity because Plaintiff has not shown that the right at issue was clearly established, i.e., that it would be clear to a reasonable officer that Defendants' conduct was unlawful under the circumstances.  Therefore, the Court will grant Defendants' Motion for Summary Judgment with respect to Hudson's first cause of action.

## B.  Municipality Liability Under 42 U.S.C. § 1983

Both Hudson and Defendants have moved for summary judgment with respect to the City of North Las Vegas' liability under 42 U.S.C. § 1983.  Hudson argues the North Las Vegas Municipal Court's decision granting his motion to suppress in the underlying criminal prosecution conclusively establishes Defendants acted unconstitutionally and Defendants should be barred from relitigating the issue in this case under the doctrine of collateral estoppel.  In addition, Hudson argues that because the City of North Las Vegas admitted Defendant officers acted in accordance with its policies and practices during the encounter with Hudson, Hudson has established municipal liability pursuant to Monell.  Defendants argue Hudson should not be allowed to use collateral estoppel to prove a constitutional violation occurred, but, even if the officers violated Hudson's constitutional rights, Hudson has not shown the City of North Las Vegas promulgated a specific policy

11

which caused the violation.

"Municipalities, their agencies, and their supervisory personnel cannot be held liable under section 1983 on a theory of respondeat superior." Shaw v. State of Cal. Dep't of Alcoholic Beverage Control, 788 F.2d 600, 610 (9th Cir. 1986). But these entities may be held liable for "deprivations of constitutional rights resulting from their policies or customs." Id.; Haugen v. Brosseau, 339 F.3d 857, 874-875 (9th Cir. 2003). Thus, a plaintiff suing a municipality or its agency must establish both a constitutional deprivation and the existence of a municipal custom or policy that caused the deprivation. Munger v. City of Glasgow Police Dep't, 227 F.3d 1082, 1087 (9th Cir. 2000); see also Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986) (holding that "municipal liability under § 1983 attaches where-and only where-a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."). For example, in Monell, the Department of Social Services and the Board of Education of the City of New York promulgated an official policy compelling pregnant employees to take unpaid leaves of absence before such leaves were medically required. 436 U.S. at 661. The Court held that because the city's policy was the "moving force" behind the constitutional violation, the city could be liable under section 1983. Id. at 694-95.

The Court already has concluded Defendant officers did not violate Hudson's Fourth Amendment rights, therefore Hudson's municipality claim fails because he has not demonstrated a constitutional violation.[3] However, even if Hudson had shown Defendants violated his constitutional rights, he has not shown that the City of North Las Vegas deliberately chose a policy from among various alternatives that requires or causes its police officers to deprive others of their constitutional rights in the manner Hudson has alleged.

---

[3] As stated above, Hudson has not provided the Court with sufficient evidence to apply collateral estoppel in this case.

1  Hudson's Requests for Admission asking the City of North Las Vegas to "[a]dmit that the
2  actions of [Defendant officers] on or about October 11, 2002 with respect to [their]
3  encounter with plaintiff John Hudson were completely and entirely within the policies,
4  practices, procedures and customs of the City of North Las Vegas" do not establish
5  municipality liability under Monell.  Although the City admitted the officers' conduct was
6  within its policies and practices, such an admission simply shows that the City sanctioned
7  its officers' conduct because it believes the officers acted appropriately and constitutionally,
8  i.e., within its policies and practices.   Evidence demonstrating a municipality's opinion
9  regarding the constitutionality of its employees' conduct is irrelevant with respect to
10 whether a municipality promulgated a policy causing its employees to act
11 unconstitutionally.  Hudson has not presented any evidence of a North Las Vegas policy,
12 practice, or custom that caused Defendant officers to deprive Hudson of his constitutional
13 rights. Therefore, the Court will grant Defendants' Motion for Summary Judgment with
14 respect to Hudson's second cause of action.

**C.  Negligent Hiring, Supervision, & Training**

Defendants argue the Court should grant summary judgment as to Hudson's third cause of action alleging negligent hiring, supervision, and training because Defendant officers acted reasonably under the circumstances when they stopped Hudson.  Hudson's motion for summary judgment did not address this issue.

Hudson's negligence claim fails because the Court has ruled as a matter of law that Defendants' conduct was reasonable under the circumstances.  Consequently, the City of North Las Vegas did not breach any duty it owed Hudson.  Therefore, the Court will grant Defendants' Motion for Summary Judgment as to Hudson's third cause of action.

///
///
///

## IV.    CONCLUSION

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment (Doc. #46) is hereby GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment Regarding Liability of Defendant City of North Las Vegas (Doc. #28) is hereby DENIED.

IT IS FURTHER ORDERED that Plaintiff's Complaint (Doc. #1) is hereby DISMISSED with prejudice.  Judgment is hereby entered in favor of Defendants and against Plaintiff.

DATED:   January 4, 2007

_____
PHILIP M. PRO
Chief United States District Judge